IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DR. MUHAMMAD SHAJAAT**                                        **PLAINTIFF**

V.                            **4:22CV00490 JM**

**DENIS MCDONOUGH,**
**SECRETARY OF THE**
**DEPARTMENT OF**
**VETERANS AFFAIRS,**
**In his official capacity**                                      **DEFENDANT**

## ORDER

Pending is Defendant's motion for summary judgment. (Docket # 15). Plaintiff filed a response and Defendant has filed a reply.

Plaintiff Dr. Muhammad Shajaat ("Dr. Shajaat") filed this civil rights action on May 27, 2022 claiming that he was discriminated against and subjected to a hostile work environment based on his race, national origin, religion, age and color. Dr. Shajaat, who identifies himself as a dark-skinned Pakistani of Indian race and a Sunni Muslim, has been employed as a doctor at Central Arkansas Veterans Healthcare System ("CAVHS") since 2002. Dr. Shajaat clarifies in his response to the pending motion for summary judgment that he is not seeking to recover for a discrete employment action, but instead seeks to recover for an "ongoing and overwhelming pattern of disparate treatment based on the closely linked characteristics of his race, national origin, religion, color and age" which resulted in a hostile environment. (ECF No. 19).

Facts

Dr. Shajaat argues that he can establish his hostile work environment claim based on three patterns of treatment: (1) the failure to distribute night shifts equally to all physicians

employed by Defendant, thus requiring him to work a higher number of night shifts; (2) the suspension of his clinical privileges and placing him on a Focused Professional Practice Evaluation, and (3) a pattern of harassing comments made about his Muslim faith.  Although Dr. Shajaat is still employed by CAVHS, he has not worked a shift since August 30, 2021.  On August 30, 2021, Dr. Shajaat tested positive for the COVID -19 virus.  He subsequently developed complications from the virus and has not been able to return to work.  He has been receiving workers' compensation benefits during this time period.

      Dr. Derek Bryant was Dr. Shajaat's supervisor from January 1, 2018 through 2021.  Dr. Shajaat asserts that he worked more night shifts compared to other physicians. In 2020, Dr. Shajaat worked twenty-four night shifts while Dr. Marlon Doucet, a Caucasian male who is older than Dr. Shajatt worked eleven. In 2021, Dr. Shajaat worked seventeen night shifts while Dr. Doucet worked four. In April 2021, Dr. Doucet became the assistant director in the emergency department, so some of his administrative duties were done during the day.

      During this time, the physicians would get templates to put in scheduling requests, which Dr. Shajaat would submit. Dr Shajaat testified that he could not remember an incident when his scheduling request was denied. Further, Dr. Shajaat testified that, whatever the final version of the schedule was, he would not go against it. However, according to Dr. Shajaat, another doctor, Dr. Barry Hendrix, would discuss planning his schedule with Dr. Bryant while Dr. Shajaat was never offered this treatment.  On one occasion, Dr. Shajaat asked to talk to Dr. Bryant about the schedule, and he was referred to another physician, Dr. Ali, as the scheduler.  Dr. Ali is a Pakistani Sunni Muslim physician who is slightly younger than Dr. Shajaat.  Dr. Ali worked fewer night shifts than Dr. Shajaat in 2021.  Dr. Hendrix, a Caucasian male, worked more night shifts than Dr. Shajaat in 2021.  Dr. Kittell, another physician in the emergency department, is

Caucasian and works only night shifts. Dr. Shajaat alleges that when it was brought to Dr. Bryant's attention that he was regularly scheduled for night shifts, Dr. Bryant refused to change the schedule and states that Dr. Shajaat liked to work night shifts and that schedules had to accommodate the needs of his friends.

Dr. Shajaat also complains that he was subjected to anti-Muslim remarks and jokes. During the time that Dr. Bryant was Dr. Shajaat's supervisor, Dr. Hendrix made remarks or jokes three or four times in Dr. Shajaat's presence about a Muslim person receiving honey-roasted pork as a gift during Ramadan. Dr. Shajaat did not report the remarks made by Dr. Hendrix to Dr. Bryant. Prior to when Dr. Bryant became chief of Emergency Medicine, Dr. Kyser made jokes about Muslim females wearing hijabs to Dr. Shajaat, whose wife wore a hijab. Dr. Shajaat did report that to his supervisor at the time. Dr. Shajaat also felt marginalized for his religion and race when Dr. Doucet asked him about his perspective about cartoons depicting the prophet Muhammad that were being circulated in European countries. Dr. Shajaat did not report those comments to Dr. Bryant. Finally, Dr.Shajaat was offended by crude language used and harassing behavior, which was not directed at him, by his colleagues in the emergency department.

Dr. Shajaat's third complaint centers on an incident involving the suspension of his clinical privileges and placement on a focused professional practice evaluation. On January 28, 2021, Dr. Bryant received information about a patient complaint about care he received on January 23, 2021. The veteran complained about care he received in the emergency room, specifically that the doctor stood in the doorway and did not come in the room to touch him or do anything, and that no EKG or CT was done. The veteran patient said he returned on January 24, 2021 with similar symptoms and was immediately taken for a CT scan and EKG. When Dr. Bryant reviewed the charting from January 22, 2021, January 23, 2021, and January 24, 2021, he

3

saw that the patient had been seen by Dr. Shajaat on that date and he was concerned because he had received a similar complaint from nursing staff in March 2020 that Dr. Shajaat had not gone in a patent room but documented a physical exam.  Dr. Bryant reviewed closed circuit television footage from January 23, 2021 and he determined that Dr. Shajaat entered the room and was inside the room for roughly four minutes.  However, Dr. Bryant's chart review reflected that the patient, when seen on January 23, 2021, had complained of neck, chest, and back pain as well as new onset of numbness in the arm but all of these complaints were not addressed by Dr. Shajaat.  When the patient returned and was seen on January 24, 2021 for neck pain and numbness in arm, he was given a CT and CTA that revealed a small carotid aneurysm, and the patient was admitted for possible stroke. An MRI on January 25, 2021 showed an acute thalamic stroke.

      Based on the episode of care from January 23, 2021Dr. Shajaat was referred for peer review. The physician conducting the peer review raised concerns that triggered a decision by Dr. McClain to conduct a focused clinical care review of Dr. Shajaat's charts. A sample of charts were selected from a four-month time period before and after the complaint and were sent to eight different peer providers across other Department of Veterans Affairs ("VA") facilities in this region.  As he was instructed, Dr. Bryant compiled the findings of those providers and presented them to the Professional Standards Board meeting at CAVHS on April 13, 2021. The board voted to send the case to the Medical Center Director, Dr. Margie Scott, with the recommendation of suspension of privileges based on the findings of the review. Since Dr. Bryant presented the findings, he abstained from voting.  Based on the recommendation, Dr. Scott temporarily suspended Dr.Shajaat's privileges. Dr. Scott also requested additional focused chart reviews. During this time, Dr. Shajaat was detailed to a non-clinical position. He was not

disciplined in any way and his pay was not changed or affected however, the suspension of his privileged resulted in a change in his job duties.

Dr. Bryant compiled a final report of the reviewers' findings that was submitted to Chief of Staff Dr. Tina McClain and Medical Center Director Dr. Margie Scott.  Per VA policy, Dr. Scott had three options: 1) consider the findings minor, take no action, and return provider to full privileges; 2) consider the findings serious and recommend a period of Focused Professional Practice Evaluation ("FPPE") for cause with specific benchmarks given and followed; or 3) if the findings are considered critical, terminate clinical privileges and proceed with possible separation from employment.  Dr. Scott chose the second option, and advised Dr. Shajaat by letter dated May 6, 2021 that his privileges would be fully reinstated, but due to the fact that concerns were identified, which he acknowledged, he would be placed on an FPPE for cause. Because Dr. Bryant was Chief of the Emergency Department, Dr. McClain contacted him to pull together benchmark improvement metrics for the FPPE.  In addition to chart reviews, Dr. Shajaat was also required to complete an OORAM intubation training as part of his FPPE.  This was included because Dr. Bryant had become aware of an instance in October 2020 when Dr. Shajaat sent a patient from the emergency department to be intubated rather than performing the intubation himself. Dr. Shajaat did not consider the metrics set to be fair, unbiased or equitably applied to all CAVHS physicians.  However, he failed to identify a similarly situated individual not in his protected status who was treated differently.

Dr. Bryant was notified that Dr. Shajaat's privileges were restored by Dr. Scott on May 6, 2021, and he immediately tried to contact Dr. Shajaat, but he was not able to reach him until May 12, 2021. They were not able to meet until Sunday, May 16, 2021 when they met at a restaurant to review the criteria for Dr. Shajaat to return to work. On that date, they reviewed Dr.

Shajaat's FPPE metrics as well as suggestions for his mid-year review. Over the next ninety days, Dr. Bryant reviewed a random sampling of Dr. Shajaat's charts and met with Dr. Shajaat weekly to discuss them. Dr. Shajaat performed well throughout this time period and met all of the required metrics. Dr. Shajaat's FPPE ended on August 15, 2021, and he worked that day, but was off per his request for the following six days. He returned to work for a shift on August 22, 2021, then was off work again for a family emergency on August 23, 2021. Dr. Shajaat returned to work in the emergency department for a shift on August 28, 2021. After that, he tested positive for COVID-19 and has not returned to work since.

On September 14, 2021, Dr. Bryant presented Dr. Shajaat's case to the Professional Standards Board, and he vouched for Dr. Shajaat's hard work and the improvement in his charting, and Dr. Bryant recommended that he be restored to full Ongoing Professional Performance Evaluation status ("OPPE"), which he was. Because of his hard work and improvement, Dr. Bryant rated Dr. Shajaat high satisfactory on his 2021 performance review, and Dr. Bryant recommended he receive a pay for performance bonus in November 2021.

<u>Standard of Review</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*,"[to] point out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir.2011) (en banc)

Discussion

To establish a *prima facie* case of hostile work environment harassment, Dr. Shajaat must show: (1) that he is a member of a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of his employment. *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014).

"To raise a triable fact on the fourth element, the claim-triggering conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 663 (8th Cir. 2021).   The Eighth Circuit has defined an objectively offensive environment as "one that a reasonable person would find hostile or abusive, examining all of the circumstances, such as 'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct [is so severe or pervasive that it] unreasonably interfered with the employee's work performance.' " A*nderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (quoting *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004)).

Harassment "standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant." *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003). More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999).

Taking the facts in the light most favorable to Dr. Shajaat, the Court finds that he has not set forth sufficient evidence to show either that the alleged harassment was because of his race, national origin, religion, color and age or that the "harassment affected a term, condition, or privilege of his employment."  Considering all of the allegations together, the incidents were relatively infrequent, and were not sufficiently severe or pervasive to show that his work environment was objectively offensive.  "The stringent hostile work environment standard is designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language ... and occasional teasing.' " *Smith v. Fairview Ridges Hosp.*,

625 F.3d 1076, 1083 (8th Cir. 2010) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ), *abrogated on other grounds by Torgerson*, 643 F.3d at 1043. "[M]erely rude or unpleasant" conduct are insufficient "to affect the terms and conditions of employment." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010) (quoting *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003)). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citation omitted). Further, reviewing all of the evidence in Dr. Shajaat's favor, the Court does not find any evidence that the alleged conduct was based on his race, national origin, religion, color or age.

Conclusion

For these reasons, Defendants' motion for summary judgment (docket # 15) is GRANTED.

IT IS SO ORDERED this 3rd day of May, 2024.

_____
James M. Moody Jr.
United States District Judge